UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-4215-SNOW

UNITED STATES OF AMERICA,          :

        Plaintiff,                :

v.                                 :

RICARDO LINARES, et al.,           :

        Defendants.               :
_____

FILED by _____ D.C.

SEP 24 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD

### DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on September 18, 2002, a hearing was held to determine whether the defendant **Andrea Darrios** should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably assure the appearance of this defendant as required and/or the safety of any other person and the community. Therefore, it is hereby ordered that the defendant **Andrea Garcia Darrios** be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

    1. The defendant is charged with possession of 1,335 kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Therefore, the defendant is charged with an offense involving narcotics. 18 U.S.C. § 3142(g)(1).

2.  The weight of the evidence against the defendant is substantial. Government witnesses will testify that on August 12, 2002, Broward County Sheriff's Deputy Matthew Baldwin stopped Ricardo Linares for failing to stop at a stop sign in Pembroke Pines, Florida. Linares was asked to produce his driver's license and vehicle registration. Linares retrieved his driver's license, but could not locate the registration.

During the stop, the deputy sheriff noticed several U-Haul boxes inside the vehicle and asked Linares if he was in the process of moving. Linares replied that he was, and became visibly nervous: his hands shook violently and he began sweating profusely. Deputy Baldwin asked Linares where he had come from and where he was going. Linares responded that he had come from a house located at 1205 NW 23rd Street, Pembroke Pines, and was going to an apartment very close to where his car had been stopped. Deputy Baldwin then asked Linares for permission to search the car. Linares consented, stating that vehicle belonged to a friend.

Deputy Baldwin then summoned a narcotics detection dog, which alerted to the car. The deputy asked Linares if there were any drugs inside, and Linares admitted that there was cocaine inside the boxes. Further investigation revealed that there were twelve boxes which contained 320 kilograms of cocaine. Deputy Baldwin then obtained consent from Linares to search his apartment. Inside a closet, officers found an additional thirteen kilograms of cocaine inside a U-Haul box and $13,000 in cash.

Law enforcement agents proceeded to the house at 12905 NW 23rd Street. They observed Andrea Garcia Darrios exit the residence and begin walking down the street. A Spanish-speaking agent asked Darrios if she resided at the house. Darrios at first denied living there, but then admitted that she did. She accompanied the agent to the front door, which was opened by Angel Donado Garcia. Darrios and Donado could not produce identification, and admitted that they were Colombian nationals who had entered the United States illegally. They consented to a search of the residence.

Agents found a total of 52 U-Haul boxes containing more than 1,000 kilograms of cocaine in two bedrooms. The doors to these bedrooms were closed but not locked. Darrios and Donado occupied two other bedrooms, which were the only rooms in the house that contained furniture and appeared to have been occupied. Darrios and Donado stated that they had been brought to the United States by a Colombian known only as "Roberto" and were employed to watch the house. They denied knowledge of the cocaine, but said they were instructed to open the garage door to allow others inside and not to interfere. Darrios and Donado related that they had opened to the door in this manner on several occasions during the preceding four months.

Subsequent investigation revealed that in May 2002, Donado and Darrios had signed a six-month lease of the house for $2500 per month. The lease provided that six months rent was payable in advance, together with a $5400 security deposit.

3

While agents were searching the residence, Darrios and Donado left the premises. They were found approximately two miles away in an agricultural ditch, with their bodies smeared with mud in an effort to disguise their scent from police dogs. 18 U.S.C. § 3142(g)(2).

3. The pertinent history and characteristics of the defendant are that she is a citizen and resident of Colombia with no ties to the United States, and must be deemed to be a risk of flight. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. There is probable cause to believe the defendant possessed with intent to distribute a very substantial quantity of cocaine, an offense punishable by more than ten years under the Controlled Substances Act, 21 U.S.C. § 801, et seq. Accordingly, the defendant constitutes a danger to the community. 18 U.S.C. § 3142(g)(4).

5. The Court specifically finds that there are no conditions or combination of conditions which reasonably will assure the defendant's appearance as required and/or the safety of any other person and the community. 18 U.S.C. § 3142(e).

Based upon the above findings of fact, which were supported by clear and convincing evidence, the Court has concluded that this defendant presents a danger to the community and there is a substantial likelihood that he/she will flee if released prior to trial. The Court hereby directs:

      (a) That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

      (b) That the defendant be afforded reasonable opportunity for private consultation with counsel; and

      (c) That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida, this ____ day of September, 2002.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

AUSA Scott Behnke (FTL)
Pretrial Services (FTL)
Miguel del Aguila, Esq.